BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**RYAN W. BOUNDS, OSB #000129**
**JULIA E. JARRETT**
Assistant United States Attorneys
Ryan.Bounds@usdoj.gov
Julia.Jarrett@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR   97204-2902
Telephone:   (503) 727-1000
Facsimile:   (503) 727-1117
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:17-CR-00224-MO |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **JAMES PEPION,** | |
| Defendant. | Sentencing:   April 4, 2018, at 11:45 a.m. |

The United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and through Assistant United States Attorneys Ryan W. Bounds and Julia E. Jarrett, hereby submits its memorandum setting forth the government's position on sentencing. The Court has set this matter for sentencing on April 4, 2018, at 11:45 a.m.

///

///

///

I.      **BACKGROUND AND CRIME OF CONVICTION**

On June 30, 2017, pursuant to a plea agreement with the government, defendant James Pepion entered pleas of guilty to both counts of the Information filed in this case. The first count charged defendant with trafficking in goods bearing counterfeit trademarks in violation of 18 U.S.C. § 2320(a), a class-C felony with a 10-year maximum sentence. The second count charged him with money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), also a class-C felony but one carrying a maximum sentence of 20 years' imprisonment. In addition, defendant admitted a forfeiture allegation against approximately $200,000 in proceeds and 619 pairs of counterfeit shoes involved in his trafficking offense.

James Pepion is a 28-year-old sneaker enthusiast and entrepreneur. But for the facts leading to these proceedings, he might have seemed an all-American success story. He hails from a modest background: By his sister's account, he was bullied and ostracized in school for his penury. By his early twenties, however, he had obtained a college degree, operated his own business, and enjoyed some of the finer things in life: fancy houses, fast cars, fashionable clothes, and season tickets to the Trailblazers. He financed his resplendent lifestyle on credit and with the proceeds of "Supplied, Inc.," and its website, www.get-supplied.com, an online hub for high-end sneakers in rare and collectible styles. He established Supplied, Inc., in 2011, when he was 23 years old.

Pepion's business focused on acquiring limited-edition Nike Air Jordan sneakers and selling them at significant premiums. At first, Pepion bought his merchandise from legitimate retailers using "runners"—typically homeless Portlanders. Pepion would give the runners cash to line up outside Nike retailers on the eve of a desired model's release date with the aim of buying up the stock as soon as the stores opened. Pepion also befriended Nike employees who

would get sought-after shoes at the office or through their access to the Nike employee store. Pepion would advertise the shoes he had for sale on his website and social media platforms, including Instagram.

Pepion was a gifted promoter, and—courtesy of Nike's own marketing efforts and reputation for design and quality—his merchandise had vast appeal. The market he stoked, however, far exceeded the supply available through legitimate channels in and around Portland. Sensing opportunity, Pepion turned to sources much farther afield. This is where he went wrong. He started buying from shadowy sellers in Hong Kong and China, where many of Nike's shoes are manufactured—and, regrettably, stolen—and counterfeits are rampant.

By October 2013, Pepion was relying heavily on imports from Chinese sources to satisfy his customers. Most of the shoes he imported were obviously fake when they arrived: They came tied in plastic bags and piled loose in shipping cartons that bore patently false declarations about their contents and value. Shoeboxes bearing counterfeit Nike and Air Jordan logos came collapsed and unfinished, so that Pepion and his employees would have to assemble them to package the shoes for resale. Given these conditions, United States Customs and Border Patrol (CBP) agents repeatedly interdicted and seized Pepion's inbound shipments. Pepion thus enlisted friends and family members to serve as straw-consignees for his imports.

The counterfeit nature of the shoes from China was evident not only from the manner in which they arrived. They were often noticeably inferior to or different from authentic Nike sneakers. This led to a steady stream of complaints both to Pepion's business and to Nike headquarters. Paypal, which processed the bulk of payments made to Supplied, Inc., received several such complaints in conjunction with customers' demands for refunds:

1. "My friend compared the shoes to a pair of Jordans that he has and it's clearly a fake."

**Government's Sentencing Memorandum**                                                               **Page 3**

2. "They sold me a pair of fake Jordan future glow and they claim that they sell authentic shoes.  The shoe laces are thi[c]ker than the authentic ones and the shoe laces are not waxed (the authentic ones are waxed.) This really pissed me off I will report them on social media and I want my money back."

3. "[S]hoes are listed as 100% authentic.  Once [I] received the shoes it was clear that they were not but a cheap copy.  I would like a full refund immediately."

4. "I received the shoes on 12/24/14...couldn't compare to another until 1/1/2015.  The shoes were missing size tag inside the shoe necessary shoe horn and the color of the sole is lighter than the authentic version if the shoe.  Overall you guys sent me a fake pair of shoes and I would like my money refunded."

Customers also accused Nike of not doing enough to protect them from being duped by Pepion's operation.  In an August 2015 email, a disgruntled buyer complained on a Nike counterfeiting hotline:

> Like many others in the shoe community, a lot of us are disappointed in Nike's lack of action against counterfeit sneaker sellers.  There is a company based out of Portland shelling out a lot of fakes to many unknowing buyers.  What this does is cause more headaches because people are double-checking and triple-checking their shoes.  Seeing how Nike is based out of Oregon, it's troubling to see Nike not take action.  I'm sure by now you have heard of Supplied PDX, or Swagsupply, or Get-Supplied.  They're all the same company and run by the same group of crooks.

Pepion's sale of counterfeits thus harmed not only his unwitting customers but also, of course, Nike itself.  In addition to imposing on Nike the costs of investigating his scheme, Pepion's actions inevitably undermined faith in the Nike brand.[1]

///

---

[1] Nike will be seeking, and is entitled to receive, restitution for the costs of its investigation under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A.  *See United States v. Sterling*, 685 F. App'x 880, 884 (11th Cir. 2017) ("The statute under which [defendant was] convicted, 18 U.S.C. § 2320, provides that intellectual property holders are victims of the crime of trafficking in counterfeit goods and thus are entitled to restitution to the extent that they suffered actual loss." (citing 18 U.S.C. §§ 2320(e)(2)(B), 2323(c))).  Investigative costs are subject to restitution.  *See United States v. Gordon*, 393 F.3d 1044, 1056-57 (9th Cir. 2004) (upholding district court's order of restitution for investigative costs).

**Government's Sentencing Memorandum**                                                       **Page 4**

Accordingly, Nike took action. It undertook a thorough investigation of Supplied, Inc.—at a cost of approximately $47,789—and then referred the matter to the Bureau of Immigration and Customs Enforcement, Homeland Security Investigations (ICE-HSI). Between October 2013 and May 2016, CBP and ICE-HSI seized 55 international shipments of shoes destined for Pepion (at least 45 of them from China). All but one of these shipments contained exclusively counterfeit Nike packaging and Air Jordan sneakers—649 pairs in all.

As noted, Pepion relied primarily on PayPal to process payments for his merchandise. In the roughly three-year period from January 2012 through March 2015, he received 9,418 payments totaling more than $2.6 million. Pepion admits that he made at least $150,000 in profits from his sales of counterfeit sneakers during this time. To conceal the illicit source of these funds, Pepion deliberately commingled the proceeds from his counterfeit sales with proceeds from his sales of authentic Nike footwear. The proceeds passed through Pepion's PayPal account into several business and personal accounts at U.S. Bank.

In April 2016, ICE-HSI and Internal Revenue Service Agents executed a search warrant at Pepion's residence and home-office, seizing more than 1600 pairs of sneakers—at least 618 of them counterfeit—and five cartons of shoe boxes and packaging materials. On the same date, agents executed seizure warrants on Pepion's financial accounts at PayPal and U.S. Bank, seizing a total of $95,551.11. Those funds were forfeited to the United States by default judgment entered on July 18, 2017, in case number 3:16-cv-02254-MA.

///

## II.  GUIDELINES APPLICATION AND RECOMMENDED SENTENCE

Base Offense Level, Count 1 (USSG § 2B5.3(a)) ........................................8

    Counterfeit value exceeding $150k (USSG § 2B5.3(b)(1)(B)) ...........10

    Importation of counterfeit goods (USSG § 2B5.3(b)(3)(A)) .................2

    Adjusted offense level..........................................................................<u>20</u>

Base Offense Level, Count 2 (USSG § 2S1.1(a)(1)) ...............................20

    Convicted under 18 U.S.C. § 1956 (USSG § 2S1.1(b)(2)(B)) ..............2

    Adjusted offense level..........................................................................<u>22</u>

Adjustment for Acceptance of Responsibility (§ 3E1.1) ........................... -3

Total Offense Level ................................................................................19

<u>Defendant's Criminal History</u>.......................................................I (0 points)

The foregoing Guideline calculation yields an advisory sentencing range of 30 to 37 months.  The government recommends a four-level downward variance in light of defendant's acceptance of responsibility, stipulation to the additional forfeiture of $105,000 (by way of money judgment), and waiver of substantive motions and appeal.  The resulting Guideline range would yield a low-end sentence of 18 months.  Accordingly, and pursuant to the parties' plea agreement, the government recommends a sentence of 18 months' imprisonment, to run concurrently as to each count, followed by a three-year term of supervised release.[2]

The PSR-writer recommends a shorter term of imprisonment, citing only defendant's childhood penury, ADHD diagnosis, and compliance with his conditions of pretrial release. Given the deliberate, highly organized, and flagrantly fraudulent nature of defendant's scheme over the course of several years—and the patently self-indulgent purposes to which he put the proceeds of his crimes—any further variance from the guideline sentence of 30 months is unwarranted.  Defendant grew up in an intact, if not wealthy, family with parents who may

---

[2] The government agrees with the conditions of supervision recommended in the PSR, but urges the additional condition of timely payment of a restitution order for Nike's reimbursable investigative expenses, which the government believes amount to $47,788.65.

**Government's Sentencing Memorandum**                                                                 **Page 6**

have been "unsupportive" but never abused or abandoned him. His circumstances are, if anything, unusually devoid of mitigating factors relative to other defendants who come before this Court.

### III.   FORFEITURE

On July 13, 2017, the Court issued a Preliminary Order of Forfeiture (ECF No. 13), which, pursuant to Rule 32.2(b)(4), becomes final at sentencing. Defendant is subject to forfeiture of proceeds in the amount of $105,000.00 in United States currency, representing a portion of the proceeds of defendant's criminal activity, imposed as a money judgment against defendant. The government asks that the Court orally pronounce the forfeiture at the sentencing hearing as part of defendant's sentence and include the forfeiture amount in the written judgment of conviction.

### IV.   CONCLUSION

For the foregoing reasons and pursuant to the parties' plea agreement, the government recommends a sentence of 18 months' imprisonment, followed by a three-year term of supervised release under the conditions recommended by the Probation Office, a restitution order to Nike in the amount of $47,788.65, and a money judgment by way of forfeiture in the amount of $105,000.

DATED this 28th day of March 2018.

> Respectfully submitted,
>
> BILLY J. WILLIAMS
> United States Attorney
>
> /s/ *Ryan Wesley Bounds*
> RYAN W. BOUNDS, OSB #000129
> JULIA E. JARRETT
> Assistant United States Attorneys